7170

## McMEEKIN v. SOUTHERN RY.

1. CARRIER—BILL OF LADING.—A paper in form of the same effect as a bill of lading containing the words "as per conditions company's bill of lading" is in effect a bill of lading, especially where so recognized by carrier's agent.

2. EVIDENCE—WRITTEN INSTRUMENTS—SECONDARY EVIDENCE.—A copy of a notice of special damages for delay in delivering freight, identified by carrier's agent is admissible as evidence upon failure of carrier to produce original.

3. CARRIER—BILL OF LADING—INDORSEMENT.—Delivery of bill of lading by consignee to a third person without indorsement transfers title to the goods. But that the agent of carrier recognized the right of claimant to the goods and offered to pay him the value of the lost part is a recognition of liability of carrier to him for breach of contract of shipment.

4. IBID.—FREIGHT—SPECIAL DAMAGES.—In absence of negligence on part of carrier in attempting to trace and find freight, consignee cannot recover special damages for delay in transportation under notice given subsequent to date of shipment, but under such notice special damages may be recovered for delay in transporting a duplicate shipment.

5. IBID.—IBID.—IBID.—Measure of damages for delay in transporting freight with notice that vendee requires it for a special purpose stated in general terms.

6. IBID.—DAMAGES for loss to the business of constructing a mill caused by delay in transporting machinery is the interest on the money invested in the work of construction and the wages of the laborers employed for construction reduced by the earnings which could have been secured by reasonable diligence from the employment of such laborers in other work.

Before WATTS, J., Fairfield, February term, 1908. Reversed.

Action by H. A. McMeekin against Southern Ry. From judgment for plaintiff, defendant appeals.

*Messrs. Abney & Muller* and *McDonald & McDonald,* for appellant. *Messrs. McDonald & McDonald* cite: *Re-*

*ceipt for goods should not be received in evidence as bill of lading:* 3 Elliott on Ev., 78 S. C., 38 ; 97 Ala., 353 ; 78 S. C., 305. *Copy notice of special damages improperly admitted there being no notice to produce original:* 59 S. C., 590 ; 60 S. C., 300 ; 75 S. C., 345. *Special damages:* 75 S. C., 338 ; 79 S. C., 155 ; 1 Sedg. on Dam., 122, 218 ; 2 Id., 95, and notes ; 71 S. C., 82, 211 ; 78 S. C., 254 ; 75 S. C., 351 ; 74 S. C., 351 ; 76 S. C., 338 ; 77 S. C., 182. *Measure of damages:* 1 Hutch. on Car., 910 ; 10 Rich., 387 ; 71 S. C., 337 ; 75 S. C., 25, 60 ; 54 S. E., 125 ; 49 S. E., 882 ; 51 S. E., 161. *Measure of damages for delay in establishing a plant:* 2 Speer, 551 ; 25 S. C., 68 ; 40 S. C., 524 ; 66 S. C., 61 ; 70 S. C., 16 ; 139 U. S., 199 ; 76 S. C., 348 ; 81 S. C., 181 ; 53 Am. St. R., 139 ; 61 Id., 388 ; 81 S. C., 186.

*Messrs. Ragsdale & Dixson,* contra, cite : *Proof of receipt:* 24 S. C., 382. *Secondary evidence competent after notice to produce original:* 80 S. C., 527. *Special damages from time of notice:* 76 S. C., 342 ; 79 S. C., 157. *No negligence in tracing:* 75 S. C., 321 ; 97 S. C., 408. *Measure of damages for delay to the business:* 71 S. C., 86 ; 77 S. C., 182 ; 81 S. C., 881.

April 15, 1909. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiff, H. A. McMeekin, in the latter part of July, 1906, through W. R. Rabb & Co., in Winnsboro, S. C., ordered from a firm in Atlanta, Ga., a saw mill outfit. Upon arrival of the machinery at Rockton, S. C., plaintiff's station, it was discovered that material parts, a husk frame and pulley, were missing. On 4th August, plaintiff gave notice to Estes, defendant's agent at Rockton, of special damage accruing to his business because of the delay ; and after waiting about ten days ordered another husk frame and pulley. The missing portion of the first shipment never arrived, and the second consignment

was not received until 6th September. Plaintiff brought this action for the value of the lost husk frame and pulley, and for special and punitive damages for the loss incurred. On defendant's motion, the trial Judge granted a nonsuit as to punitive damages. Defendant's counsel admitted liability for seventy-seven dollars, the value of the lost portions of the machinery first shipped, and the Court submitted to the jury the issue of special damages. The jury brought in a verdict of $617 for the plaintiff and the defendant appealed.

The appeal is based upon the alleged errors of the Circuit Court in the admission of testimony, in the charge to the jury, and in the refusal of motions for nonsuit, for direction of a verdict and for a new trial. For convenience the numerous exceptions, as far as possible, will be considered together.

The exceptions taken to the admission in evidence of the alleged bill of lading and the written notice to defendant of plaintiff's special loss because of delay are without merit. The paper introduced as the bill of lading had been recognized as valid by the defendant's agent at Rockton, for upon its presentation he had turned over to the plaintiff such of the goods set out therein as had arrived. A bill of lading is in form nothing more than a receipt for freight, issued to the consignor by the carrier containing the contract of shipment. The paper here introduced was of the same effect as a regular printed bill of lading, for in addition to being a receipt it contained this specification, "As per conditions company's bill of lading," which supplied the essential that a mere receipt might lack. *Dunbar* v. *So. Ry.*, 62 S. C., 414; 40 S. E., 884.

The paper purporting to be the notice to defendant of special damages to plaintiff was only a copy; but it was identified by defendant's agent, and upon the failure of the railway company to produce the original, it was admissible. *Beaty* v. *So. Ry. Co.*, 80 S. C., 527.

The exception "that the alleged bill of lading was issued to Rabb & Co., and there was no indorsement thereon, which was necessary to give the plaintiff herein a right of action on said alleged bill of lading," was one taken to the refusal of the nonsuit. The general rule of law is, that the delivery of the bill of lading by the person who, according to the terms of the bill, is entitled to the goods will transfer his title. 6 Cyc., 426. Appellant cites no authority or provision of the contract to show that actual indorsement is necessary to pass the title of the consignee in a bill of lading to a third party. But were this the rule, the fact that defendant's agent recognized the plaintiff's right to the goods under the bill of lading, in absence of indorsement to him, would be some evidence to go to the jury of waiver of such a requirement. Furthermore, the issuance of a voucher for $77, the value of the lost machinery, to plaintiff, which was never cashed and was in evidence, was evidence that the railway company recognized its liability to the plaintiff, McMeekin, for its breach of contract of shipment,

The exception setting forth the absence of any contractual relation between the plaintiff and the carrier is also overruled.

The appellant contends that this is not a case where special damages could be allowed, and the numerous exceptions stating this contention will be considered together. Defendant earnestly urges that there was no notice of special damages given at the time of shipment, and hence it could not be held liable for such loss accruing to plaintiff because of delay. Plaintiff admitted that he claimed special damages only from the time when he notified the defendant's agent of such loss, subsequent to the shipment of the first order. The only evidence as to defendant's course, after receiving this notification was the testimony of Estes, agent at Rockton, to the effect that he telegraphed and did what he could to trace the missing pieces. There-

fore, the plaintiff, in absence of evidence of negligence on the part of the carrier in attempting to trace and find the freight, could not recover special damages for delay in delivery, under a notice given subsequent to the time of shipment. *McKerall* v. *Ry. Co.*, 76 S. C., 338, 56 S. E., 965; *Matheson* v. *Ry. Co.*, 79 S. C., 155, 60 S. E., 437. As to the first shipment, therefore, there was no foundation laid in the evidence for the recovery of anything more than the $77, the value of the lost portion of the machinery. But this is not true as to the second shipment, for the notice of damages accruing because of delay, being prior to the second shipment, certainly extended to that shipment. The record discloses that the agent, Estes, was cognizant of plaintiff's anxiety and inconvenience because of delay; and the short lapse of time was evidence that by the exercise of reasonable diligence he could have kept the notice in mind. *Mills* v. *Ry.*, *infra*, 242. The following from the charge of the Circuit Court is the law applicable to these circumstances. "I charge you, as a matter of law, that special damages for losses arising from failure to deliver goods can be recovered if the defendant had notice of the special circumstances at the time of the shipment." This expresses in substance the reason given by the Circuit Judge for refusing to direct a verdict for only $77. There can be no doubt that the evidence laid a foundation for the jury to find special damages for the delay in the second shipment, and the judgment cannot be reversed for error in the charge.

As to the measure of damages, the Circuit Court charged as follows: "In arriving at these damages I charge you when the carrier accepts goods for transportation with notice that the owner requires them at the place to which they are to be carried for a special business purpose, the measure of damages for delay in carriage is the expense and detriment to the special business with reference to which the carriage was undertaken fairly attributable to the delay, including expense and loss of time

reasonably incurred in the effort to find the delayed property or anything of that sort. This does not include speculative profits resting on the mere hope of particular future transactions." This instruction was very general, but there was no exception to it as a statement of the law.

The defendant, however, made a motion for a new trial on the ground that there was no evidence to support a verdict for six hundred and seventeen dollars. The exception on this point must be sustained. The plaintiff's business had not been launched. and, therefore, he could not recover profits he expected to make. *Tappan & Noble* v. *Harwood,* 2 Speer, 536; *Bird* v. *Tel. Co.,* 76 S. C., 345, 56 S. E., 973; *Standard Supply Co.* v. *Carter & Harris,* 81 S. C., 181. The mill was not erected and it was impossible to anticipate the conditions which would exist at the time of completion. Indeed, it might be that the mill would never be completed. For these reasons there would be no reasonably certain basis upon which to compute the measure of damages for rental value, as in the case of the stoppage of a completed ginning plant like that in *Standard Supply Co.* v. *Carter & Harris, supra.* The true measure of damages, therefore, in this case, is, the loss to the business of constructing a mill—not running a mill. The loss to the business of construction was the interest on the money invested in the work of construction, and the wages of the laborers employed for construction, reduced by the earnings which the plaintiff either received or by reasonable diligence could have received from the employment of such laborers in other work. *Saluda Mfg. Co.* v. *Pennington,* 2 Speer, 746. There was nothing in the record to show the exact day on which the second shipment was ordered, but it was alleged by the plaintiff that it was about ten days after notification to Estes of special damages. Taking the view most favorable to the plaintiff and assuming the date to be 14th August, it was only twenty-three days from that time to the arrival of the freight on 6th September. The plaintiff

employed six hands and paid each ten dollars a month and board. There was nothing in the record to show that the interest on the capital invested in the new mill outfit was very large; and the sum of these losses, even leaving out of consideration a reasonable return which the plaintiff might have derived by ordinary diligence in employing his laborers in other work, must have been far less than six hundred and seventeen dollars, and that finding by the jury was plainly excessive.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and the cause remanded for a new trial.