JACOB V. HIGGINS v. UNITED STATES EXPRESS COMPANY.

Submitted July 5, 1912—Decided December 23, 1912.

1. Where mill castings were deposited with an express company for delivery to a repair shop, and no specific instructions were given to the carrier as to the necessity for an expeditious transportation of the castings by the carrier to and from the shop, and the carrier was not informed that pending the return of the castings the mill would have to shut down and the plaintiff's business cease, the damages recoverable for delay in transportation and return of the castings are governed by the rule laid down in *Hadley* v. *Baxendale*, 9 *Exch.* 341.
2. For an inordinate and unnecessary delay in the carriage of goods, the consignor is entitled to recover the loss directly and proximately resulting from the delay.
3. Whether the delay was unreasonable is generally a question of fact.

On *certiorari* to the Hunterdon Common Pleas.

Before Justices TRENCHARD, PARKER and MINTURN.

For the plaintiff, *Elinor R. Gebhardt* and *William C. Gebhardt*.

For the defendant, *McDermott & Enright*.

The opinion of the court was delivered by

MINTURN, J. The suit was instituted before the small cause court in the county of Hunterdon, to recover damages upon a contract entered into between the plaintiff and defendant for the shipment of certain mill castings from Flemington to the Bacas Water Motor Company in Newark, where they were to be repaired and returned to Flemington for use in the mill. The substantial facts are not in dispute.

At the time of the shipment on March 2d, 1911, the castings were tied in a bag and taken to the office of defendant company at Flemington, placed on the scales and weighed by the agent in charge, who having made the necessary in-

quiries as to the destination of the bag, made out a receipt. The defendant admitted the receipt of the goods, and the giving of the receipt to the plaintiff; also admitted a delay in the shipment whereby the castings were not delivered to the consignee until some time about the middle of May, and shortly thereafter were returned by defendant to the plaintiff at Flemington, and that the plaintiff then refused to accept them. The plaintiff in the interim attempted to trace the shipment but unsuccessfully, and as a result was obliged to procure the necessary parts for his mill machinery. In this action he seeks to recover the cost of the new parts and incidentals, including time necessary to adjusting them in place, besides expenses incurred in tracing the shipment, and six days of time lost by the shutting down of the mill.

The conspicuous facts in the case upon which liability must be predicated, if at all, are that no value was placed upon the goods at the time of shipment, and that the shipping receipt contains a limitation of $50 as the extent of the defendant's liability in such case, and that the plaintiff at the time of shipment gave no notice to the defendant of the particular use to which the castings were put in the operation of the mill, and the consequent necessity for a speedy delivery of the same, in order to continue the operation of the mill.

The briefs deal at length with the legal effect of the limitation of liability contained in the receipt, but our difficulty has been to ascertain under the well settled legal rules applicable to the plaintiff's *status,* how under the circumstances a recovery can be had for the loss of profits resulting from the closing down of the mill until the repairs were made.

*Hadley* v. *Baxendale,* 9 *Exch.* 341, supplies the rule applicable to this phase of the case, and there the now well settled doctrine was enunciated that "No recovery can be had for loss of profits in contracts of sale, made or contemplated by the shipper, unless the facts and circumstances of such sale are communicated to the carrier upon shipment." The rule in its application is not limited to contracts of sale in contemplation by the shipper, but is applied to the varying phases of mercantile life, upon the theory that unless the carrier be

made aware by the shipper, at the time of shipment, of the urgency, and the circumstances that require unusual dispatch or care in transportation, he cannot be presumed to know the facts, the existence and knowledge of which upon his part present the legal *status* upon which his liability for more than ordinary damages can be predicated.

In *Wolcott Johnson v. Mount, 7 Vroom* 270, Mr. Justice Depue, speaking for this court applied this rule, and held, adopting the language of Hadley *v.* Baxendale, that the damage recoverable in such cases is "such as might arise naturally, *i. e.*, according to the usual course of things, from the breach of the contract or such as might reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable results of the breach of it."

In Hadley *v.* Baxendale, the facts were not in the main unlike those in the case at bar. There the plaintiff, the owner of a flour mill, sent a broken iron shaft to the defendants, who were common carriers, to be conveyed by them to certain mill-wrights. The defendant's clerk was told at the time of shipment that the mill was stopped and that the shaft must be delivered immediately, and that a special order should be given to hasten its delivery. The delay in delivery by the carrier caused the closing of the mill for some days, and resulted in a loss of profits to the mill owner. These profits were held not to be recoverable in the action for a breach of the contract, for the reason that the special circumstances of the case, *i. e.*, that the mill owner was depending upon the return of the shaft for the purpose of continuing operations at the mill, had not been communicated to the carrier at the time of shipment.

The case at bar presents no facts at all analogous in strength or force to those of the English case upon which it can be urged that the parties had in contemplation such an exigency resulting from delay in transportation as the shutting down of the plaintiff's mill. On the contrary the case is entirely barren of the very element of notice which distinguishes the English case.

Our Court of Errors and Appeals has recently in *Pope* v. *Ferguson,* 53 *Vroom* 566, had this subject before it in a discussion of the ruling in Hadley *v.* Baxendale, upon the question of the effect of the sale of scrap iron to a vendee, who subsequently sold the entire output to a subcontractor; and in an opinion by the learned Chief Justice, the test of liability for more than the ordinary decrease in value of the material was made to depend upon the fact of notice by the vendee.

The cases, both English and American, are collected in a valuable foot-note to *Horne* v. *Midland Railway Co., L. R.,* 8 *C. P.* 131; 5 *E. R. C.* 506, 524, from a perusal of which it becomes manifest that this rule of notice has been uniformly adopted as the correct test of liability.

Another feature of this case, however, presents a different aspect. The castings in question were delivered to defendant for carriage on March 2d, 1911, and were not delivered by it to the consignee until the middle of May, and some days thereafter were tendered to the plaintiff at Flemington, who refused to accept them.

This unusual interval of time in transit presents the inquiry whether the delay thus occasioned was reasonable because the duty of the defendant was manifestly to deliver in a reasonable time. *Hale Carr.* 408.

What is a reasonable time is dependent on the circumstances. *Coffin* v. *Railroad Company,* 64 *Barb.* 379; *Missouri Pacific Railway* v. *Hall,* 66 *Fed. Rep.* 868.

An unreasonable delay, however, conceding this to be such, does not amount to a conversion, and the owner therefore is bound to receive the goods when tendered at the proper place, however long the delay. *Scovill* v. *Griffith,* 12 *N. Y.* 509; *Michigan Central Railway Co.* v. *Burrows,* 33 *Mich.* 6; *Hutch. Carr.* 328.

The measure of damages therefore under such a *status* is not the value of the goods, since the bailor still retains his ownership, but the loss proximately caused by the delay. *Hale Carr.* 408; *Scovill* v. *Griffith,* 12 *N. Y.* 509; *Fox* v.

*Railroad Company*, 148 *Mass.* 220; *The Caledonia*, 157 *U. S.* 124.

We must assume that in rendering judgment the trial court was necessarily influenced by this circumstance, and found the delay under the circumstances to be inordinate and unnecessary, and that by reason thereof, the repairs made by the plaintiff to his machinery became imperative, and were the direct and proximate consequence of the delay in shipment.

We are unable from the testimony in this case to discover any evidence from which it may be reasonably inferred that the limitation of damage to the sum of $50 contained in the receipt was in any manner brought to the attention of the plaintiff, at the time of shipment, and that he assented to it, and therefore under the well settled rule applicable to such a situation the limitation cannot be said to be binding upon him. *Hayes* v. *Adams Express Co.*, 44 *Vroom* 105; *Cohen* v. *United States Express Co.*, 52 *Id.* 355.

The plaintiff therefore is entitled to recover his entire demand for the repairs to his machinery, amounting as we conceive to $66; but, for the reasons stated, is not entitled to his claim for possible earnings and profits during the interval of the delay.

The judgment below will therefore be reversed for the purpose of modification to the extent herein indicated.